**Ahmed v Essex Terrace, Inc.**

2024 NY Slip Op 30037(U)

January 5, 2024

Supreme Court, Kings County

Docket Number: Index No. 517368/2017

Judge: Debra Silber

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 9 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 5th day of January, 2024.

P R E S E N T:

HON. DEBRA SILBER,
                              Justice.
-------------------------------------------------------------------------X

SALEH AHMED,
                              Plaintiff,
            -against-

ESSEX TERRACE, INC. and PRISMA
CONSTRUCTION, INC.,
                              Defendants.
-------------------------------------------------------------------------X
PRISMA CONSTRUCTION, INC.,

                              Third-Party Plaintiff,

            -against-

TUR CONTRACTING INC.,

                              Third-Party Defendant.
-------------------------------------------------------------------------X

**DECISION / ORDER**

Index No.: 517368/2017
Mot. Seq. # 8, 9 & 10

The following e-filed papers read herein:                    NYSCEF Doc Nos.:

Notice of Motion and Affidavits (Affirmations)
Annexed _____    121-122, 135, 137, 160-161
Opposing Affidavits (Affirmations)_____    182, 185, 187, 189, 198
Affirmations in Reply _____    190, 192, 194, 196, 197

Upon the foregoing papers, plaintiff Saleh Ahmed moves for an order, pursuant to

CPLR 3212, granting him partial summary judgment with respect to liability on his Labor

Law § 240 (1) cause of action as against defendants (motion sequence number 8).

Defendant Essex Terrace, Inc. (Essex) moves for an order, pursuant to CPLR 3212,

[* 1]

granting it summary judgment: (1) on its cross claims for contribution, contractual indemnification, and common-law indemnification against defendant/third-party plaintiff Prisma Construction, Inc. (Prisma); (2) on its cross claim for contractual indemnification against third-party defendant Tur Contracting Inc. (Tur); and (3) dismissing Prisma's cross claims against Essex (motion sequence number 9). Prisma moves for an order, pursuant to CPLR 3212, granting it summary judgment: (1) dismissing plaintiff's common-law negligence and Labor Law §§ 200 and 241 (6) causes of action as against it; (2) dismissing Essex's cross claims against it; (3) in its favor on its third-party claims for contractual indemnification and breach of contract as against third-party defendant Tur; and in its favor on its contribution and common-law indemnification cross claims against Essex (motion sequence number 10).

For the reasons which follow, plaintiff's motion (motion sequence number 8) is granted. Essex's motion (motion sequence number 9) is granted to the extent that: (1) summary judgment on its cross claim for contractual indemnification against Prisma is granted, conditioned upon a finding of a negligent act or omission of a subcontractor of Prisma, anyone directly or indirectly employed by such contractor or anyone for whose acts they may be liable; (2) summary judgment on its cross claim for contractual indemnification against Tur is granted; and (3) Prisma's cross-claims against Essex are all dismissed. Essex's motion is otherwise denied.

Prisma's motion (motion sequence number 10) is granted to the extent that: (1) plaintiff's common-law negligence and Labor Law § 200 causes of action are dismissed against it, and plaintiff's Labor Law § 241 (6) cause of action is dismissed to the extent

[* 2]

that it is predicated on Industrial Code (12 NYCRR) §§ 23-1.5 (a), (b), (c) (1), (c) (2); 23-1.7; 23-1.8; 23-1.16; and 23-1.17; but not as premised on § 23-1.5 (c) (3); (2) summary judgment on its third-party contractual indemnification and breach of contract claims against Tur are granted; and (3) Essex's claims for contribution and common-law indemnification from Prisma are dismissed. Prisma's motion is otherwise denied.

## BACKGROUND

In this action premised on common-law negligence and violations of Labor Law §§ 200, 240 (1) and 241 (6), plaintiff alleges that he sustained injuries on July 15, 2016, while disassembling a pipe scaffold, when, after he removed a hook holding a scaffold crossbar in place, the crossbar swung down and hit him in the face, and he then fell 26 feet to the ground. At the time of the accident, plaintiff was performing façade renovation work at an apartment complex that was owned by Essex. Essex hired Prisma as the general contractor for the project, which involved interior and exterior renovation work. Prisma, in turn, hired Tur to perform the exterior brick repair work. Plaintiff was employed by Tur as a helper.

At his deposition, plaintiff testified that just before the accident he was standing on a single platform plank approximately 26 feet above the ground and attempting to remove a scaffold crossbar, and that, after he removed the hook for the crossbar, the crossbar swung down and struck him on his head, and he fell to the ground. Plaintiff asserted that he was removing the crossbar in the manner his supervisor and coworkers had shown him and that, although his supervisor was not standing on the plank with plaintiff at the time of the accident, his supervisor was present and assisting with the disassembly process. Photographs of the scaffold show that it did not have side rails or safety rails and plaintiff

[* 3]

testified that Tur did not provide him or its other workers with safety harnesses or safety lines, and that he did not have a harness; nor was he attached to a safety line at the time of the accident.

Vasilios Douvas, a part owner of Prisma and its onsite supervisor, testified at his deposition that he was at the Essex complex on the date of the accident. Although he was not in the vicinity of the building where plaintiff was working at the time of the accident, after being informed of the accident by a Prisma employee, he went over to the accident site and observed someone he later learned was plaintiff laying on the ground next to the scaffold. Later that day, Douvas asserted that he viewed Essex's security camera video footage taken in the area of the building being worked on, and in this video footage he observed plaintiff, who was on the scaffold approximately 6 feet off of the ground, kicking at a cross brace and planking and then plaintiff appeared to jump off of the scaffold (Douvas Deposition at 41, lines16-18). Later in his testimony, however, Douvas stated that he observed "someone just jumping, falling off that scaffold" (Douvas Deposition at 65, lines 17-19) and again, after observing this person kicking something, "I just saw the man drop. That's all I saw" (Douvas Deposition at 66, lines 2-5). While he was viewing Essex's security camera footage, Douvas used his cellphone to film a copy of the video of the footage.

In his deposition testimony, Mahfujur Rahmen, Tur's owner, concedes that he signed the contract with Prisma, and that Tur was hired to perform exterior façade brickwork pursuant to the contract. Rahmen, however, also states that plaintiff was not employed by Tur, that Tur did not have scaffolds and did not perform work from scaffolds

[* 4]

and that, up to the time of the accident, Tur had not performed any work on the façade that could not be performed from the ground.

Despite Rahmen's assertion that plaintiff was not employed by Tur, the court notes that the Workers' Compensation Board identifies Tur as plaintiff's employer in its decision, filed on November 14, 2016, in which it awarded plaintiff payments based on a temporary total disability.

Plaintiff commenced this action against Tur and Essex on September 8, 2017. Essex failed to answer or appear in the action, and plaintiff thereafter moved for leave to enter a default judgment against it, which motion was granted in an order (Borrok, J.) dated May 10, 2018. Essex thereafter obtained an order (Jimenez-Salta, J.), dated August 5, 2020, vacating the default, and granting Essex leave to serve a late answer. Essex thereafter answered and asserted cross claims against Prisma and Tur. Plaintiff, however, appealed the August 5, 2020 order that granted Essex's motion to vacate the default and gave it leave to serve a late answer. In a decision dated June 22, 2022, the Appellate Division reversed the order and denied Essex's motion to vacate the default order (*see Ahmed v Essex Terrace, Inc.*, 206 AD3d 866, 867 [2d Dept 2022]). Accordingly, in view of the Appellate Division's reversal, plaintiff's claims against Essex, with regard to its liability, have been determined by the default judgment order dated May 10, 2018.

Although Prisma had asserted cross claims against Essex in its answer, it did not demand that Essex answer its cross claims (CPLR 3011), nor did Prisma move for leave to enter a default judgment against Essex based on Essex's failure to appear in the action. Prisma, in addition, was not a party to the appeal, and the Appellate Division order did not

[* 5]

specifically address the validity of Prisma's cross claim against Essex or Essex's cross claim against Prisma. Aside from its cross claims against Essex, Prisma commenced a third-party action against Tur alleging claims for contribution, common-law indemnification, contractual indemnification, and breach of contract for failure to obtain insurance covering Prisma as an additional insured.

## DISCUSSION

### *Plaintiff's Causes of Action*

Turning first to the parties' contentions relating to plaintiff's Labor Law § 240 (1) cause of action, that section imposes absolute liability on owners and contractors or their agents when their failure to protect workers employed on a construction site from the risks associated with elevation differentials proximately causes injury to a worker (*see Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 3 [2011]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). Here, there is no dispute that Prisma may be held liable under Labor Law section 240 (1) as a general contractor (*see McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 374 [2011]; *Ennis v Noble Constr. Group, LLC*, 207AD3d 703, 704 [2d Dept 2022]), that plaintiff's façade repair work is covered work within the meaning of section 240 (1) (*see Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878, 882 [2003]), and that the fall itself involved a sufficient elevation differential to implicate the protections of section 240 (1) (*see Doto v Astoria Energy II, LLC*, 129 AD3d 660, 662 [2d Dept 2015]; *Auriemma v Biltmore Theatre, LLC*, 82 AD3d 1, 9 [1st Dept 2011]; *Bradley v Morgan Stanley & Co., Inc.*, 21 AD3d 866, 867-868 [2d Dept 2005], *abrogated on other grounds Wrighten v ZHN Contr. Corp.*, 32 AD3d 1019 [2d Dept 2006]). Further, plaintiff

[* 6]

has made a prima facie showing of a section 240 (1) violation through his deposition testimony that he fell to the ground from a single plank of a scaffold that had no safety rails, and without the protection of a safety harness, after being struck in the head by the crossbar (*see Mena v 5 Beekman Prop. Owner LLC*, 212 AD3d 466, 467 [1st Dept 2023]; *Leon-Rodriguez v Roman Catholic Church of Sts. Cyril & Methodius*, 192 AD3d 883, 885 [2d Dept 2021]; *Morocho v Boulevard Gardens Owners Corp.*, 165 AD3d 778, 778 [2d Dept 2018]; *Kupiec v Morgan Contr. Corp.*, 137 AD3d 872, 873 [2d Dept 2016]; *Poracki v St. Mary's R.C. Church*, 82 AD3d 1192, 1194-1195 [2d Dept 2011]; *cf. Torres v New York City Hous. Auth.*, 199 AD3d 852, 854 [2d Dept 2021]; *Medina-Arana v Henry St. Prop. Holdings, LLC*, 186 AD3d 1666, 1668 [2d Dept 2020]).

Prisma, in opposition, argues that plaintiff's improper manner of disassembling the crossbar constitutes the sole proximate cause of the accident. Plaintiff's manner of disassembling the crossbar, however, cannot be the sole proximate cause since he was doing the work in the view of his supervisor in the manner shown to him by his supervisor and his coworkers (*see Zholangi v 52 Wooster Holdings, LLC*, 188 AD3d 1300, 1302 [2d Dept 2020]; *Rico-Castro v Do & Co N.Y. Catering, Inc.*, 60 AD3d 749, 750 [2d Dept 2009]; *Pichardo v Aurora Contrs., Inc.*, 29 AD3d 879, 880-881 [2d Dept 2006]; *see also Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp.*, 34 NY3d 1166, 1168 [2020]).

Prisma also contends that Douvas' deposition testimony that the security camera video that he viewed after the accident showed plaintiff jumping off of the scaffold demonstrates factual issues as to whether plaintiff's actions were the sole proximate cause of his injury (*see Montgomery v Federal Express Corp.*, 4 NY3d 805, 806 [2005]; *Jurski v*

[* 7]

*City of New York*, 204 AD3d 983, 984 [2d Dept 2022]; *D'Antonio v Manhattan Contr. Corp.*, 93 AD3d 443, 444 [1st Dept 2012]). To the extent that the testimony of what Douvas viewed on the video may be found admissible (*see People v Finch*, 160 AD3d 1212, 1214 [3d Dept 2018] [testimony of observations viewed on a video ruled not hearsay]; *People v Jones*, 77 Misc 3d 5, 9 [App Term, 2d Dept 2022]; *see also People v Fulton*, 210 AD3d 1436, 1437 [4th Dept 2022] [discussing best evidence rule], *lv denied* 39 NY3d 1154 [2023]; *People v Grant*, 170 AD3d 888, 890 [2d Dept 2019] [foundation demonstrated], *lv denied* 33 AD3d 1031 [2019]), Douvas' testimony, which included a statement that plaintiff appeared to have jumped, but also included testimony that plaintiff appeared to fall or drop off of the scaffold, is simply too equivocal, when viewed in its entirety, to demonstrate the existence of a factual issue regarding the claim that the plaintiff was the sole proximate cause of his accident (*see Farrell v Hochauser*, 65 AD3d 663, 664 [2d Dept 2009]; *Bachurski v Polish & Slavic Fed. Credit Union*, 33 AD3d 739, 740 [2d Dept 2006]).

The court has not considered the video Douvas made of the security camera video. In order for the court to watch a video submitted as evidence for a motion in an e-file case, counsel must e-file Form EFM-4 "Notice of Hard Copy Filing" to describe the item which is not electronically filed and then actually give the video to the court in viewable form (*see Amezquita v RCPI Landmark Props., LLC*, 194 AD3d 475, 475-476 [1st Dept 2021]; Uniform Civil Rules for the Supreme Court and the County Court [22 NYCRR] §§ 202.5-b [d] [1], [7]; 202.5-bb [a] [1]). Prisma and Essex did neither (*see Amezquita*, 194 AD3d

[* 8]

at 475-476).[1] It is further undisputed that Essex did not preserve the original security camera footage.

Accordingly, Prisma has failed to demonstrate the existence of a factual issue whether Labor Law § 240 (1) was violated, and plaintiff is thus entitled to partial summary judgment in his favor with respect to liability on his section 240 (1) cause of action.[2]

With respect to plaintiff's Labor Law § 241 (6) cause of action, Prisma has demonstrated, prima facie, that Industrial Code (12 NYCRR) §§ 23-1.5 (a), (b), (c) (1), (c) (2); 23-1.7; 23-1.8; 23-1.16; 23-1.17 fail to state specific standards or are inapplicable to the facts of this case (*see generally Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 349-350 [1998]; *Honeyman v Curiosity Works, Inc.*, 154 AD3d 820, 821 [2d Dept 2017]). As plaintiff has abandoned reliance on those sections by failing to address them in his motion and opposition papers, Prisma is entitled to dismissal of the section 241 (6) cause of action the extent that it is premised on those sections (*see Debennedetto v Chetrit*, 190 AD3d 933, 936 [2d Dept 2021]; *Pita v Roosevelt Union Free Sch. Dist.*, 156 AD3d 833, 835 [2d Dept 2017]).

Prisma, however, has failed to demonstrate its prima facie entitlement to dismissal of the Labor Law § 241 (6) cause of action to the extent it is premised on Industrial Code (12 NYCRR) § 23-1.5 (c) (3). Section 23-1.5 (c) (3), which provides that "[a]ll safety devices, safeguards and equipment in use shall be kept sound and operable and shall be immediately repaired or restored or immediately removed from the job site if damaged,"

---

[1] The court notes that, although Essex provides a Dropbox link to the video, this link cannot be accessed on court system computers and that, when the court attempted to access the link on a non-court system computer, it was not accessible.

[2] As noted above, plaintiff has established his claims as against Essex by way of the default judgment.

[* 9]

states a specific standard (*see Perez v 286 Scholes St. Corp.*, 134 AD3d 1085, 1086 [2d Dept 2015]). In its motion, Prisma has not pointed to evidence in the record demonstrating the absence of a defect with the scaffold, which is a safety device within the meaning of Industrial Code (12 NYCRR) § 23-1.5 (c) (3) (*see Surko v 56 Leonard LLC*, 2021 NY Slip Op 32123[U], *16 [Sup Ct, New York County 2021] [finding issue of fact regarding violation of section 23-1.5 (c) (3) where scaffold platform only had a single plank]; *see also Beesimer v Albany Ave./Rte. 9 Realty*, 216 AD2d 853, 854 [3d Dept1995]). Nor has Prisma pointed to evidence demonstrating that no one in the chain of authority on the project had notice of a defect with the scaffold, (*see Cabral v Rockefeller Univ.*, ___ AD3d ___, 2023 NY Slip Op 06436, *1 [1st Dept 2023]; *Viruet v Purvis Holdings LLC*, 198 AD3d 587, 588 [1st Dept 2021]; *Salerno v Diocese of Buffalo, N.Y.*, 161 AD3d 1522, 1523-1524 [4th Dept 2018]; *see also Misicki v Caradonna*, 12 NY3d 511, 518-519 [2009]; *Rizzuto*, 91 NY2d at 351-352; *cf. Nicola v United Veterans Mut. Hous. No. 2, Corp.*, 178 AD3d 937, 940 [2d Dept 2019]).[3] Prisma has thus failed to demonstrate its prima facie entitlement to dismissal of the section 241 (6) cause of action to the extent it is premised on section 23-1.5 (c) (3) (*Cabral*, 2023 NY Slip Op 06436, *1; *Viruet*, 198 AD3d at 588; *Palaguachi v Idlewild 228th St., LLC*, 197 AD3d 1321, 1323 [2d Dept 2021]).

On the other hand, Prisma is entitled to dismissal of plaintiff's common-law negligence and Labor Law § 200 causes of action. Plaintiff's own testimony regarding how the accident occurred as he was disassembling the scaffold demonstrates that the

---

[3] *Misicki* (12 NY3d 511), which addressed the similar requirements of Industrial Code (12 NYCRR) § 23-9.2 (a), makes clear that the owner or general contractor need not have notice of the dangerous or unsafe condition, but rather, such notice can be satisfied by notice to plaintiff's employer.

[* 10]

accident did not occur as the result of a dangerous or defective property condition, but rather, was the result of Tur's means and methods of performing the work (*see Przyborowski v A&M Cook, LLC*, 120 AD3d 651, 652-653 [2d Dept 2014]; *Ortega v Puccia*, 57 AD3d 54, 61-63 [2d Dept 2008]; *cf. Seem v Premier Camp Co., LLC*, 200 AD3d 921, 924-925 [2d Dept 2021]; *Chowdhury v Rodriguez*, 57 AD3d 121, 129-130 [2d Dept 2008]). Where the plaintiff's injuries arise from the manner in which the work is performed, "there is no liability under the common law or Labor Law § 200 unless the owner or general contractor exercised supervision or control over the work performed" (*Carranza v JCL Homes, Inc.*, 210 AD3d 858, 860 [2d Dept 2022], quoting *Cun-En Lin v Holy Family Monuments*, 18 AD3d 800, 801 [2d Dept 2005]; *see Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 435 [2015]; *Valencia v Glinski*, 219 AD3d 541, 545 [2d Dept 2023]). Moreover, under a methods and manner of work theory of liability, "no liability will attach to the owner [or general contractor] solely because it may have had notice of the allegedly unsafe manner in which work was performed" (*Dennis v City of New York*, 304 AD2d 611, 612 [2d Dept 2003]; *see Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 878 [1993]; *Cody v State of New York*, 82 AD3d 925, 927 [2d Dept 2011]; *Ortega*, 57 AD3d at 61; *Ferrero v Best Modular Homes, Inc.*, 33 AD3d 847, 851 [2d Dept 2006], *lv dismissed* 8 NY3d 841 [2007]).

Here, the testimony of plaintiff and of Douvas demonstrates that Prisma did not provide that scaffold at issue [4] or provide Tur or its employees with instructions relating to the performance of the work. This is sufficient to demonstrate, prima facie, that Prisma did

---

[4] Rahman's deposition testimony that Tur did not own the scaffold or work from a scaffold does not suggest that the scaffold belonged to Prisma or that Prisma supervised the work on the scaffold.

[* 11]

not supervise or control the work at issue (*see Wilson v Bergon Constr. Corp.*, 219 AD3d 1380, 1383 [2d Dept 2023]; *Kefaloukis v Mayer*, 197 AD3d 470, 471 [2d Dept 2021]; *Lopez v Edge 11211, LLC*, 150 AD3d 1214, 1215-1216 [2d Dept 2017]; *Przyborowski*, 120 AD3d at 652-653; *Ortega*, 57 AD3d at 61-63; *cf. Chowdhury*, 57 AD3d at 129-130). Contrary to plaintiff's contentions, Prisma's general contractual safety responsibilities are insufficient to demonstrate supervision and control for purposes of liability under the plaintiff's common law negligence and Labor Law § 200 claims (*see Murphy v 80 Pine, LLC*, 208 AD3d 492, 496 [2d Dept 2022]; *Abelleira v City of New York*, 201 AD3d 679, 680 [2d Dept 2022]; *Goldfien v County of Suffolk*, 157 AD3d 937, 938 [2d Dept 2018]; *Messina v City of New York*, 147 AD3d 748, 749-750 [2d Dept 2017]; *Ortega*, 57 AD3d at 61-63). As plaintiff has failed to demonstrate the existence of an issue of fact with respect to Prisma's supervision and control of the work, Prisma is entitled to dismissal of plaintiff's common-law negligence and Labor Law § 200 causes of action.

### *Cross Claims and Third-Party Claims*

Turning to the indemnification and contribution claims involving co-defendants Essex and Prisma, Prisma asserts that Essex's claims against it are barred, based on the order granting plaintiff a default judgment against Essex, and that it is entitled to summary judgment on its claims against Essex for the same reason. Contrary to Prisma's contentions, Essex's default with regard to plaintiff's claims does not determine Essex's and Prisma's respective cross claims.

In this respect, after Essex failed to answer the complaint, Prisma did not move for a default judgment relating to its cross claim against Essex at the time that plaintiff did,

[* 12]

and it could not have, in any event, as Prisma did not request that Essex reply to its cross claim (*see Giglio v NTIMP, Inc.*, 86 AD3d 301, 310 [2d Dept 2011]; *Hernandez v MDL Equip. Corp.*, 2022 NY Slip Op 30425[U], *3 [Sup Ct, Kings County 2022, Silber, J.]). Prisma was also not a party to plaintiff's appeal of the August 5, 2020 order that vacated the plaintiff's default order, and the Appellate Division order did not specifically address the validity of Prisma's cross claim against Essex or Essex's cross claim against Prisma (*see Ahmed*, 206 AD3d at 866-867). Under similar circumstances, courts have held that a cross claim against a codefendant by a party in default to the plaintiff may still be considered (*see Cillo v Resjefal Corp.*, 13 AD3d 292, 294 [1st Dept 2004]; *Vierya v Briggs & Stratton Corp.*, 184 AD2d 766, 766-767 [2d Dept 1992]; *Guido v New York Tel. Co.*, 145 AD2d 203, 205 [3d Dept 1989]). Indeed, even if Essex's answer must be considered a nullity in view of the Appellate Division order, the cross claim included in that answer may be treated by the court as a third-party complaint (*see Guido*, 145 AD3d at 205). For essentially the same reasons, as plaintiff was the only party that obtained a default judgment against Essex, only the plaintiff benefits from the facts deemed admitted as a result of the default, and Prisma may not rely on those admissions for its benefit (*see Mack v Arnold Gregory Mem. Hosp.*, 90 AD2d 969, 969 [4th Dept 1982]; *Brown v Godefroy Mfg. Co.*, 278 App Div 242, 243 [1st Dept 1951]; *see also Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456-457 [1985] [a judgment taken on default generally has no collateral estoppel effect]; *Rojas v Romanoff*, 186 AD3d 103, 109 [1st Dept 2020]; *Chambers v City of New York*, 309 AD2d 81, 85-86 [2d Dept 2003]).

[* 13]

In considering their common-law indemnification and contribution claims on the merits, Essex and Prisma have both demonstrated, through the testimony of Douvas and plaintiff, that they were not negligent and that they did not supervise or control the injury producing work. They are thus both entitled to dismissal of the common-law indemnification and contribution claims they have asserted against each other (*see Chapa v Bayles Props., Inc.*, ___ AD3d ___, 2023 NY Slip Op 06025, *2 [2d Dept 2023]; *Quiroz v New York Presbyt./Columbia Univ. Med. Ctr.*, 202 AD3d 555, 557 [1st Dept 2022]; *Debennedetto*, 190 AD3d at 938; *Uddin v A.T.A. Constr. Corp.*, 164 AD3d 1402, 1404 [2d Dept 2018]; *see also McCarthy*, 17 NY3d at 377-378).[5]

Further, Essex has also demonstrated, prima facie, that it is entitled to summary judgment dismissing Prisma's contractual indemnification claim, if one was in fact asserted against it,[6] because the indemnification provisions of the Essex/Prisma contract are in favor of Essex (*see Kiss Constr., Inc. v Edison Elec. Contrs., Corp.*, 152 AD3d 575, 577 [2d Dept 2017]; *Flynn v Toys "R" Us, Inc.*, 31 AD3d 603, 604 [2d Dept 2006]). Prisma, which has not addressed this issue in its opposition papers, has failed to raise a factual issue. Essex is thus entitled to dismissal of Prisma's entire cross-claim as asserted against it.

Turning to Essex's contractual indemnification claim against Prisma, Prisma does not deny that it is bound by the contract at issue and that the accident arose from its work under the contract. The indemnification provision, however, requires indemnification for

---

[5] The court notes that Essex had not answered or appeared in the action at the time Prisma answered and asserted cross claims against Essex and, as such, Prisma would have been required to serve Essex in the same manner as with a summons and complaint (*see Hernandez*, 2022 NY Slip Op 30425[U], *2-3; CPLR 3012 [a]). This court need not address this issue because Essex has demonstrated that the claims must be dismissed on the merits, and, in any event, Essex did not raise any issue regarding the propriety of the service of Prisma's answer with cross claims in its moving or opposition papers.

[6] Prisma's cross-claim is so poorly drafted it is unclear if it asserts a claim for contractual indemnification.

[* 14]

a claim arising from the work "only to the extent caused by the negligent acts or omissions or breach of this Contract by the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder" (Essex/Prisma Contract § 3.18.1; Essex/Prisma Contract Rider § 3.18.1). As discussed above, Prisma has established that it was not negligent, and plaintiff's testimony regarding the happening of the accident does not demonstrate that there was, prima facie, negligence on the part of Tur, plaintiff, or Tur's other employees, as a matter of law (*see Palaguachi*, 197 AD3d at 1323; *see also Scavelli v Town of Carmel*, 131 AD3d 688, 690 [2d Dept 2015] [the mere happening of an accident is insufficient to establish liability in negligence]). A determination of the issue will require a trial unless plaintiff elects to proceed solely on his Labor Law § 240 (1) claim and discontinues his other claims.

Under these circumstances, Essex is entitled to an order granting it conditional summary judgment on the contractual indemnification claim against Prisma, pending a determination of negligence by a subcontractor of Prisma, or anyone directly or indirectly employed by them (*see Winter v ESRT Empire State Bldg., LLC*, 201 AD3d 844, 845-846 [2d Dept 2022]; *Graziano v Source Builders & Consultants, LLC*, 175 AD3d 1253, 1260 [2d Dept 2019]).

Both Essex and Prisma assert that they are entitled to contractual indemnification from Tur, based on the indemnification provision contained in Prisma's contract with Tur.[7]

---

[7] Essex's claims against Tur, which is not a direct defendant, probably should have been brought by way of a third-party action, rather than as cross claims, after the Second Department struck its answer.. Tur, however, does not appear to have rejected the pleading and, in failing to raise the issue in opposition to Essex's motion, would appear to have waived any procedural irregularity. In addition, if Essex had

[* 15]

In the motion papers, they have submitted the contract, which Mahfujur Rahmen, Tur's owner concedes, in his deposition testimony, that he signed, which specifically identifies Essex as the owner, and which contains a broadly worded indemnification provision that applies to "all claims . . . costs, expenses, attorneys' fees . . . related to and/or arising directly or indirectly from or out of (i) the Work." In addition, Essex and Prisma submit plaintiff and Douvas' deposition testimony to support a finding that they were not negligent, that Tur was performing the façade brick work pursuant to Prisma's contract with Tur at the time of the accident, and that plaintiff was injured while performing Tur's work. Given that indemnification provisions containing "arising out of the work" language are broadly construed (*see Brown v Two Exch. Plaza Partners*, 76 NY2d 172, 178 [1990]; *O'Connor v Serge El. Co.*, 58 NY2d 655, 657-658 [1982]; *Madkins v 22 Little W. 12th St., LLC*, 191 AD3d 434, 436 [1st Dept 2021]; *Tkach v City of New York*, 278 AD2d 227, 229 [2d Dept 2000]), Essex and Prisma have both demonstrated their prima facie entitlement to summary judgment on their contractual indemnification claims against Tur (*see Mogrovejo v HG Hous. Dev. Fund Co., Inc.*, 207 AD3d 461, 463 [2d Dept 2022]; *De Souza v Empire Tr. Mix, Inc.*, 155 AD3d 605, 605-606 [2d Dept 2017]; *Muevecela v 117 Kent Ave., LLC*, 129 AD3d 797, 798 [2d Dept 2015]; *Tobio v Boston Props., Inc.*, 54 AD3d 1022, 1024 [2d Dept 2008]).

---

appeared and answered in the ordinary course, this would not be an issue. Once a party is joined as a third-party defendant, it becomes a party to the entire action and is subject to cross-claims by the co-defendants (See CPLR 3019(b); *Doyle v Happy Tumbler Wash-O-Mat, Inc.*, 113 AD3d 818 [2d Dept 1985]; *Patrician Plastic Corp. v Bernadel Realty Corp.*, 25 NY2d 599 [1970]).

[* 16]

In opposition, Tur initially argues that the indemnification provision of the contract should not apply because Rahman's deposition testimony demonstrates that he was not proficient in reading English. A person's inability to read English, however, is "by itself, insufficient to avoid the rule that [a] party who signs a contract without any valid excuse for having failed to read it is conclusively bound by its terms" (*Kenol v Nelson*, 181 AD2d 863, 866 [2d Dept 1992] [internal quotation marks omitted]; *see Prete v Tamares Dev. 1, LLC*, 219 AD3d 1537, 1538 [2d Dept 2023]; *Ivasuk v Raglan*, 197 AD3d 635, 638 [2d Dept 2021]). Absent any evidence in the record indicating that Rahman had a reasonable excuse for failing to have the agreement translated, or that Prisma misled Rahman regarding the terms of the agreement he was signing, Rahman's mere inability to understand English fails to demonstrate a factual issue regarding the applicability of the terms of the agreement (*see Ivasuk*, 197 AD3d at 638; *Neery v Greenpoint Mtge. Funding, Inc.*, 144 AD3d 646, 648 [2d Dept 2016]; *cf. Pimpinello v Swift & Co.*, 253 NY 159, 163 [1930]).

Tur also argues that Prisma's contract with Tur does not identify the place of Tur's work or identify the building where the accident occurred as being part of the work. This argument, however, ignores Rider A to Prisma's contract with Tur, which indicates that Tur's work included the removal of old brick and the installation of new brick for the "Essex Terrace" project, without any limitation on the scope of such work, and ignores section 1.1 of the contract that expressly incorporates Essex's contract with Prisma as part of the contract. Exhibit B to the Essex/Prisma contract delineates the exterior masonry work to be performed, refers to drawings, identifies the building at issue as one of the

locations where such work was to be performed, and in no way suggests that such work was limited to work at the ground level. Under these circumstances, Rahmen's testimony that Tur's work under its contract with Prisma did not include the work at issue creates a feigned issue of fact (*see Schaeffer v May*, 214 AD3d 424, 425 [1st Dept 2023]; *Sandor v 9274 Group, Inc.*, 114 AD3d 1276, 1277 [4th Dept 2014]; *see also Meade v Hampton Diaries, Inc.*, 219 AD3d 1424, 1425 [2d Dept 2023]).

Tur also points to Rahmen's testimony that plaintiff was not employed by Tur in arguing that the accident does not arise out of Tur's work. Plaintiff, however, attached a copy of the Workers' Compensation Board's determination identifying Tur as plaintiff's employer as an exhibit to his motion papers, and Tur, which did not dispute that plaintiff was employed by Tur before the Board, is bound by that determination (*see Velazquez-Guadalupe v Ideal Bldrs. & Constr. Servs., Inc.*, 216 AD3d 63, 71-72 [2d Dept 2023]; Workers' Compensation Law § 11 [2]). Although submitted by plaintiff, the Board determination may be considered with respect to the claims against Tur since Prisma's motion was argued and submitted at the same time as plaintiff's motion.

Accordingly, Tur has failed to overcome the motion and demonstrate a factual issue regarding whether Essex and Prisma are entitled to contractual indemnification from it. Thus, Essex and Prisma are entitled to summary judgment in their favor on their contractual indemnification claims against Tur.

Finally, with respect to Prisma's breach of contract claim against Tur based on Tur's alleged failure to obtain insurance naming Prisma as an additional insured on a primary basis, Prisma has provided the disclaimer letter from Tur's insurer, Utica First Insurance

[* 18]

Company, which indicates that it was disclaiming coverage based on an exclusion that applies in the event that the injury occurs during the course of the  employment by an employee of Tur (*see Bassuk Bros., Inc. v Utica First Ins. Co.*, 1 AD3d 470, 471 [2d Dept 2003], *lv dismissed* 3 NY3d 696 [2004]).  Courts are generally reluctant to find a breach based solely on a disclaimer letter as the disclaimer, in and of itself, may not demonstrate that the policy obtained failed to comply with the contractual requirements (*see Perez v Morse Diesel Intl., Intl., Inc.*, 10 AD3d 497, 498 [1st Dept 2004]; *KMO-361 Realty Assoc. v Podbielski*, 254 AD2d 43, 44 [1st Dept 1998]; *Garcia v Great Atl. & Pac. Tea Co.*, 231 AD2d 401, 402 [1st Dept 1996]; *see also Dorset v 285 Madison Owner LLC*, 214 AD3d 402, 404 [1st Dept 2023]; *Binasco v Break-Away Demolition Corp.*, 256 AD2d 373, 375 [2d Dept 1998]).

Here, however, the policy exclusion relied upon in the disclaimer letter violates an express term of the contract, which provides that the subcontractor's insurance shall not contain any exclusions (Prisma/Tur contract § 6.1 [l]), and thereby rendered the insurance ineffective for its intended purpose of providing Prisma with coverage for injuries to Tur's workers which might occur during Tur's work on the project (*see Roldan v New York Univ.*, 81 AD3d 625, 629 [2d Dept 2011]; *Bachrow v Turner Constr. Corp.*, 46 AD3d 388, 388 [1st Dept 2007]; *Clapper v County of Albany*, 188 AD2d 774, 775-776 [3d Dept 1992]; *Bssuk Bros., Inc. v Utica First Ins. Co.*, 2002 WL 31925593[U], *3, 7 [Sup Ct, Kings County 2002] [addressing the employee exclusion in a Utica First  Ins. Co. policy], *affd* 1 AD3d 470 [2d Dept 2003], *lv dismissed* 3 NY3d 696 [2004]).  It is clear to the Court that Tur did not obtain the kind of insurance required by the contract.

Under these circumstances, the court finds that Prisma has demonstrated, prima facie, that the insurance obtained by Tur breached the terms of the insurance procurement requirements of the contract. As Tur, in opposition, has failed to demonstrate a factual issue in this respect, Prisma is entitled to summary judgment on this issue (*see Calvitti v 40 Garden, LLC*, 155 AD3d 1399, 1402 [3d Dept 2017]). Prisma, however, must still demonstrate at the trial of this matter that it has incurred unreimbursed damages as the result of the breach (*see Inchaustegui v 666 5th Ave. Ltd. Partnership*, 96 NY2d 111, 115-116 [2001]; *Bleich v Metropolitan Mgt., LLC*, 132 AD3d 933, 935 [2d Dept 2015]).

This constitutes the decision and order of the court.

**E N T E R :**

_____

**Hon. Debra Silber, J.S.C.**